**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.      ) | CASE NO: 3:07-CR-317-WKW |
| ) | |
| ) | |
| ROBERT DOUGLAS BARNETT ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL RESPONSE
TO MOTIONS TO SUPPRESS**

In its Supplemental Response, the government has argued that Mr. Barnett's response to Officer Creighton's question ("I don't suppose you have a permit for this, do you?") was a "voluntary and non-custodial" statement and therefore should not be suppressed. (Doc. 29, pp. 1 - 2.) The government further argues that *Terry* stops are not subject to the requirement of the *Miranda* decision (Doc. 29, p. 2); that the totality of the circumstances establish that Mr. Barnett was not in custody when he was being questioned (Doc. 29, p. 2); and that, although Officer Creighton testified that Mr. Barnett was not free to leave after the officer discovered the pistol, such belief is not "relevant" to the Court's inquiry because the determination of "custody" is based on an objective test, rather than subjective perceptions (Doc. 29, pp. 3 - 4).    Mr. Barnett respectfully disagrees with each of these assertions.

During argument at the conclusion of the hearing on Mr. Barnett's motion to suppress, the government conceded that Mr. Barnett was detained for Fourth Amendment purposes once his identification was requested and taken. On direct examination by government counsel, Officer Creighton testified that (1) he asked for Mr. Barnett's identification <u>before</u>

he asked for consent to search Mr. Barnett's duffle bag, and (2) he took the identification from Mr. Barnett. At the conclusion of all testimony, during arguments of counsel, government counsel stated that Mr. Barnett **was detained** once there was a request for his identification and that Mr. Barnett was then not free to leave because he would not have reasonably have left his identification behind. Government counsel indicated that at that point, the encounter between Officer Creighton and Mr. Barnett was "a *Terry* stop."

The government's position during argument at the evidentiary hearing is consistent with Fourth Amendment jurisprudence. The Eleventh Circuit has held that where an officer retains a person's identification, the encounter has "matured into an investigative stop protected by the Fourth Amendment," because "a reasonable person in these circumstances would not have believed himself free to leave." *United States v. Thompson,* 712 F.2d 1356, 1359 (11th Cir. 1983). Thus, where the officer asks for display or search of personal belongings immediately after retaining the identification, such request occurs after the citizen has been seized for Fourth Amendment purposes. *Id.* at 1361.

The Supreme Court has held that because of the "non-threatening nature" of *Terry* stops, such police-citizen encounters do not automatically require *Miranda* warnings, *Berkhemer v. McCarty*, 468 U.S. 420, 440 (1984). However, in *Berkhemer*, the Supreme Court also held that people "subjected to restraints comparable to those associated with a formal arrest," must be advised of their *Miranda* rights, even if such restraints occur during a *Terry* stop. *Id.* at 441.

Application of *Miranda* rights turns on the facts known to the detained person. Thus, the perceptions of those involved are relevant. In discussing when a detainee would perceive that sufficient restraints exist, the Court compared the brief "few minutes" duration of typical traffic stops with the prolonged duration of stationhouse interrogations "in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." *Id.* at 437-38.

The Court also noted that in the typical traffic stop, most traffic detainees would not feel at the mercy of the inherent authority of armed police officers, because, among other circumstances: "(p)assersby, on foot or in other cars, witness the interaction of officer and motorist" and "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." The Court held that during the typical traffic stop, these factors diminish the motorist's fears of possible police abuse should he not respond to police questioning. *Id.* at 438-39.

The Eleventh Circuit has identified a number of factors "as circumstances suggesting police coercion that might render consent involuntary." *United States v. Blake*, 888 F.2d 795, 799 (11th Cir. 1989). These factors are also relevant to consideration of restraint, and include:

> an officer blocking or otherwise impairing the individual's progress, *United States v. Bowles,* 625 F.2d 526 (5th Cir.1980); an officer retaining an individual's tickets or identification; *United States v. Chemaly,* 741

3

> F.2d at 1352; *United States v. Robinson,* 690 F.2d 869, 875 (11th Cir.1982); an officer failing to inform the suspect that he or she was free to leave and that he or she could refuse to permit the requested search, *United States v. Chemaly,* 741 F.2d at 1353; *United States v. Robinson,* 690 F.2d at 876; an officer physically maneuvering the individual in a particular direction, *United States v. Berry,* 670 F.2d at 604; *see United States v. Espinosa-Guerra,* 805 F.2d at 1507-08; an officer coercing the individual to move from a public area to a private area or office, *United States v. Elsoffer,* 671 F.2d 1294, 1298 (11th Cir.1982); *United States v. Berry,* 670 F.2d at 604; an officer asking questions or making statements that would lead a reasonable individual to believe that he or she had been singled out as suspicious, *United States v. Chemaly,* 741 F.2d at 1353; *United States v. Elsoffer,* 671 F.2d at 1298; *United States v. Berry,* 670 F.2d at 597; or an officer informing the individual that an innocent person would cooperate with the police, *United States v. Setzer,* 654 F.2d 354, 357-58 (5th Cir. Unit B 1981), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982).

888 F.2d at 799.

In addition, the Supreme Court has held that any words or actions by police which are likely to elicit incriminating responses constitute "interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

In the present case, Mr. Barnett was stopped late at night, in a secluded area, with trees on either side of the railroad tracks. According to the officers' testimony, nearby street lights were not lit. Mr. Barnett was on foot, but the uniformed police officers detaining him were in two marked police cars. Officer Creighton used hand gestures to direct Mr. Barnett to come toward him. Officer Creighton told Mr. Barnett he was being contacted because of criminal activity. Without a typical "traffic" purpose to the stop, Mr. Barnett would have no reason to believe the stop would be brief. Mr. Barnett stood between the two cars. Because

of the hour and location, no other traffic passed by and thus Mr. Barnett would not have felt the protection of passersby witnessing the interaction. Even if in conversational tones, Officer Creighton's questions were accusatory and leading statements: "you're not responsible for [the car break-ins] are you;" "you don't mind if I look in your bag;" "you don't have anything I need to know about, do you;" "I don't suppose you have a permit for that." Once Officer Creighton saw the pistol, he determined that he would not permit Mr. Barnett to leave. Under these circumstances, Mr. Barnett was restrained and *Miranda* warnings were required.

In *United States v. Perdue*, 8 F.3d 1455 (10th Cir. 1993), the Tenth Circuit held that significant restraint, even in the context of a valid *Terry* stop, would cause a reasonable person to believe he was at the mercy of the police, thus requiring *Miranda* warnings. In that case, a man driving toward a shed at which a search for marijuana was being conducted, who turned around at the sight of the police, was taken out of his car at gunpoint, held face down on the ground, and questioned while police helicopters flew overhead. 8 F.3d 1464 - 1466.

Although finding sufficient basis for a *Terry* stop, the court also held that the circumstances and nature of the questions posed required *Miranda* warnings: "Given the fact that Mr. Perdue was entering a piece of property that was primarily used to grow marijuana, the initial question, 'What are you doing here?,' was reasonably likely to illicit an incriminating response. When Mr. Perdue answered, 'To check on my stuff,' the questions that immediately followed, 'What stuff?,' and 'Who does the marijuana belong to?' are the

5

essence of interrogation." 8 F.3d at 1465.

In the present case, the facts support a similar finding that the questions posed to Mr. Barnett constituted interrogation. Mr. Barnett was told that he was stopped due to criminal activity in the area; Officer Creighton had decided to hold Mr. Barnett when the pistol was found; and Mr. Barnett was virtually told "you don't have a permit for that, do you?" Thus, the purpose of Officer Creighton's questions was to elicit incriminating responses. Thus, *Miranda* warnings were required.

In the *Perdue* case, as noted above, the Tenth Circuit found that sufficient basis for a *Terry* stop existed. But in the present case, there was insufficient basis for a *Terry* detention. Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that **the person detained** has engaged, or is about to engage, in criminal activity. The reasonable suspicion required must be more than a hunch, and must reach at least "some minimal level of objective justification," taken from the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 7-8 (1989) (quoting *I.N.S. v. Delgado,* 466 U.S. 210, 217(1984)).

In the present case, Officer Creighton had no suspicions specifically concerning Mr. Barnett. He had not received any reports of criminal activity in the location of the stop during his entire shift or that day. He possessed no details of any known suspects for the earlier car break-in at the Highland Bar. At best, he "believed [Mr. Barnett] possibly could

6

have" committed the break-in. Officer Creighton testified that Mr. Barnett did nothing that indicated to the officer that Mr. Barnett was involved in criminal activity.

Moreover, the officers' actions during the detention were not limited to the actions necessary to dispel their alleged suspicions. Officer Creighton asked Mr. Barnett if he possessed "anything I need to know about," and intended to inquire into the presence of any weapons, drugs, drug paraphernalia, or any contraband.

At best, as he testified, Officer Creighton had a gut hunch, but without an individualized basis for this hunch. This does not meet the criteria for a *Terry* stop. Any alleged consent given during the stop is tainted by the illegality of the detention. Thus, any items seized or statements acquired must be suppressed.

Respectfully submitted,

s/Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Nathan Stump, Assistant United States Attorney, 131 Clayton Street, Montgomery, AL.

                                                   s/Christine A. Freeman
                                                   **CHRISTINE A. FREEMAN**
                                                   **TN BAR NO.: 11892**
                                                   Federal Defenders
                                                   Middle District of Alabama
                                                   201 Monroe Street, Suite 407
                                                   Montgomery, AL 36104
                                                   TEL:  (334) 834-2099
                                                   FAX:  (334) 834-0353
                                                   E-Mail: Christine_Freeman@fd.org