**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN  DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CASE NO: 3:07-CR-317-WKW** |
| | ) | |
| | ) | |
| **ROBERT DOUGLAS BARNETT** | ) | |

**DEFENDANT'S OBJECTIONS TO**
**RECOMMENDATION OF THE MAGISTRATE JUDGE**
**REGARDING MOTIONS TO SUPPRESS**

This case involves the police stop of Robert Barnett as he was walking along a railroad track around midnight on May 4, 2005, resulting in questioning of Mr. Barnett and a search of the duffel bag he was carrying.  During the search of his duffel bag, two firearms and ammunition were located.  Mr. Barnett was arrested on state law violations for not having a permit for the pistols and this indictment was brought, alleging the offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Mr. Barnett has moved to suppress the results of the search of his duffel bag and his responses to police questioning.

In its analysis of Mr. Barnett's motion, the Magistrate Judge recommended that the encounter between Mr. Barnett and the police be considered three distinct events, with three distinct Fourth Amendment standards for the ensuing police conduct. The Recommendation identified these events as  (1) a consensual encounter, at the initiation of the stop, "which is not subject to Fourth Amendment scrutiny" (Doc. 34, Recommendation, p.8); (2) a brief detention, once the officer physically obtained and held Mr. Barnett's personal identification,

for which the Fourth Amendment requires "an objective, reasonable suspicion of criminal activity" (Recommendation, pp. 11 - 12 ); and (3) an arrest, at the time Mr. Barnett was handcuffed, which required probable cause (Recommendation, pp.17, 18 ).

The Magistrate Judge recommends that this Court conclude: (1) that the initial encounter was consensual (Recommendation, p. 8); (2) that the initial statements made were consensual (Recommendation, pp. 18 - 19); (3) that the later detention was permissible under *Terry v. Ohio*, 392 U.S. 1 (1967) (Recommendation, pp.10, 13, 14 - 15); (4) that the search during the detention was consensual (Recommendation, p. 15); (5) that the police questioning during the detention did not require *Miranda* warnings (Recommendation, pp. 19 - 21); (6) that the arrest was supported by probable cause (Recommendation, p. 18); (7) that the later more extensive search was permissible as incident to arrest (Recommendation, p. 17); and (8) that Mr. Barnett's post-arrest statements, as conceded by the Government, should be suppressed (Recommendation, p. 22).

Mr. Barnett respectfully objects to the above recommendations (1) through (5). Further, Mr. Barnett objects to (6) and (7), as based on an implicit conclusion that the arrest and arrest-related search were not the "fruits" of earlier police conduct which violated the Fourth and Fifth Amendments.

1.      The facts surrounding the initial encounter between Officer Creighton and Barnett establish this was <u>not</u> a consensual interaction.  Officer Creighton drove his marked patrol car across Mr. Barnett's path, late at night, in an isolated area (Transcript, pp. 77 - 78,

81); signaled his intent to stop with some type of sound from the patrol car (Transcript, p.

78); called to Mr. Barnett, and gestured with his hands that Mr. Barnett was to approach him

(Transcript, pp. 79 - 80). Eventually, Officer Creighton was joined by Sergeant Morris, who

parked his patrol car on the opposite side of the street, while Mr. Barnett stood between the

two cars. (Transcript, p. 100). All of these actions by the officers amounted to a "show of

official authority," to which a response is not deemed consensual. See *United States v.*

*Mendenhall*, 446 U.S. 544, 555 (1979).

2.      Similarly, Mr. Barnett's responses to Officer Creighton's questions, including

his question as to whether or not Mr. Barnett had a pistol permit (Transcript, pp. 28 - 29),

were non-consensual responses to a show of authority.

3.      Mr. Barnett respectfully disagrees with the implicit finding of the

Recommendation that a *Terry* detention need not be based on suspicion of specific criminal

activity, and the finding that the detention in this case was permissible under *Terry* and the

Fourth Amendment.    The *Terry* opinion itself required police observation of "unusual

conduct," leading to a reasonable conclusion that "criminal activity may be afoot." *Terry v.*

*Ohio*, 392 U.S. 1,  30 (1967).   Mere observation of what the officer concludes is "unusual

conduct" (in this case, walking along railroad tracks instead of on the sidewalk, late at night,

wearing dark clothing[1], toward a nightclub which had been the site of car break-ins a day or

---

[1]Although not addressed in the Recommendation, MR. Barnett's wife testified that he
was not wearing "dark clothing," but that he instead was wearing a light blue work shirt and dark
blue pants. (Transcript, p. 188). She also testified that the duffel bag was a Tommy Hilfiger bag,
colored red, white and blue. (Transcript, pp. 190, 191).

some weeks earlier)[2] does not lead inexorably to the conclusion that criminal activity is afoot.

Officer Creighton admitted that there was nothing improper or suspicious about "walking per

se" or Mr. Barnett's identification.  (Transcript, pp. 107, 111). Officer Creighton identified

no criminal activity of which he suspected Mr. Barnett, other than his  possible role in a car

break-in that had occurred at least twenty-four hours earlier.  His questions to Mr. Barnett

included a general search for information about any criminal activity.  Regarding the contents

of the duffel bag, Officer Creighton asked "you don't have anything I need to know about?"

(Transcript, p. 105).

Officer Creighton conceded that there had been no reports of criminal activity at the

location of Mr. Barnett's detention on the night he stopped Mr. Barnett.  (Transcript, pp. 48,

49 - 50).  He acknowledged that he had no information which linked Mr. Barnett to the

earlier car break-ins in that region (Transcript, p. 101). He acknowledged that he had no

information that Mr. Barnett had ever broken into cars (Transcript, p. 103).  Rather, he

simply believed that Mr. Barnett "possibly could have" broken into cars (Transcript, p. 103).

This is not a reasonable suspicion of criminal activity – it is merely a recognition of the

physical potential of human beings. Officer Creighton had nothing but a "gut hunch that

maybe [Mr. Barnett] has something to do with something" (Transcript, p. 106).  This is not

---

[2]Officer Creighton acknowledged that there was no description of a suspect in the car
break-ins, no physical evidence left at the site, and that he did not know whose car had been
broken into or what items had been taken.  (Transcript, pp. 54 - 55, 57).

the "reasonable suspicion" required by the Fourth Amendment for a detention.[3]

4.      The totality of the facts and circumstances surrounding Mr. Barnett's alleged consent to Officer Creighton's opening of his duffel bag do not establish that "consent was given freely and unconstrained." (Recommendation, p. 15). "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983). Officer Creighton's show of authority and possession of Mr. Barnett's identification card rendered the search non-consensual.

5.      Because there was restraint on Mr. Barnett's freedom of movement, he should have received *Miranda* warnings, contrary to the Magistrate Judge's conclusion. (Recommendation, p. 21). Officer Creighton acknowledged that once he saw the pistol case and its pistol, in the duffel bag, Mr. Barnett "wasn't free to leave" and "couldn't walk away," until the officer had determined whether or not Mr. Barnett had a permit for the pistol. (Transcript, pp. 114 - 115, 130). Since he was "not going to let [Mr. Barnett] walk away" (Transcript, p. 115), his question to Mr. Barnett about whether or not Mr. Barnett had a permit for the pistol was custodial interrogation.  This required *Miranda* warnings.  Since none were given, Mr. Barnett's responses to the questions must be suppressed.  *Miranda v.*

---

[3]Officer Creighton's statement of his suspicions to the police dispatcher, which he described as "10-38 black male," do not provide any additional support for a *Terry* stop or detention.  "10-38" is police code for "suspicious." (Transcript, pp. 59, 62).

*Arizona*, 384 U.S. 436, 475 (1966).

6.      The arrest of Mr. Barnett and the subsequent, more extensive inventory search of his duffel bag, were directly related to the improper *Terry* stop and were thus the "fruit" of that conduct. The facts within the officers' knowledge on which the arrest was based, were the result of the officer's initial search of the duffel bag and custodial interrogation of Mr. Barnett. As discussed above, the search and the interrogation violated the Fourth and Fifth Amendments.

7.      The officers' purported immediate recognition that there was a pistol case in the duffel bag (Transcript, p. 19), is an essential fact to establishing the basis for extending the detention of Mr. Barnett, questioning and ultimate arrest him and ultimately placing him under arrest. Officer Creighton and Sgt. Morris contradicted each other in their descriptions of the gun case they "immediately recognized" upon opening Mr. Barnett's duffel bag. Officer Creighton described the pistol case as textured leather. (Transcript, pp. 89, 90). Sgt. Morris described it as made of black nylon material. (Transcript, p. 142). However, the Court has been deprived of assessing whether or not this fact existed. Other than the firearms related items, the other items taken from Mr. Barnett have been lost or destroyed. (Transcript, pp. 38 - 39). The government gave no explanation for the loss of this evidence, other than the speculation by Detective Armstrong that the evidence could have been lost in the move from one evidence room to a new facility. (Transcript 164 - 165). These items were solely in the custody and control of the government and they were not lost due to some

policy or practice.    In addition, no other evidence in any other case was affected by the

move.  (Transcript, p. 165).

A defendant's right to due process is denied where the government loses evidence

which was likely to contribute significantly to his defense, its exculpatory value was apparent

before it was lost, it cannot be duplicated through access to readily available means, and the

police acted in bad faith.  *California v. Trombetta*, 467 U.S. 479, 488, 489 (1984); *Arizona*

*v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Lindsey,* 482 F.3d 1285, 1293 (11th

Cir. 2007); *United States v. Brown,*    9 F.3d 907, 910 (11th Cir. 1993).  Here, it is essential

for the government to prove that Officer Creighton saw a pistol case upon opening the duffel

bag.  If Mr. Barnett could establish that Officer Creighton did not see a pistol case in the

duffel bag, because there was none or because the gun was contained in some other, less

recognizable container, then Officer Creighton's remaining actions would be shown to have

violated the Fourth Amendment.  Under these circumstances, the police failure to retain and

preserve this evidence amounts to bad faith and a denial of due process.

WHEREFORE, for the foregoing reasons, Mr. Barnett respectfully objects to the

Recommendation of the Magistrate Judge and asks that his Motion to Suppress be granted

in all particulars.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on April   17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Nathan Stump, Assistant United States Attorney, 131 Clayton Street, Montgomery, AL.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org