IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:07-cr-0317-WKW |
| | ) | |
| ROBERT DOUGLAS BARNETT | ) | |

**<u>ORDER</u>**

Before the court is the Objection (Doc. # 35) to the Report and Recommendation (Doc. # 34) of the Magistrate Judge as to the defendant's Motion to Suppress (Doc. # 10). The defendant sets forth a variety of arguments for objecting to the Recommendation. First, the defendant argues that the defendant's interaction with the police at the time of the initial encounter was not consensual due to the "show of official authority." (Def.'s Objection 2-3.) The defendant cites *Mendenhall* for the proposition that the initial encounter was not consensual, yet there is no evidence of circumstances indicating a seizure took place with respect to Barnett based on the examples listed in *Mendenhall*. *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980) (noting, *e.g.*, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). Furthermore, the defendant fails to address or attempt to distinguish the two primary cases, *Bostick* and *Delgado*, relied upon by the Magistrate Judge for finding the encounter was consensual from the case at hand. *See Florida v. Bostick*, 501 U.S. 429 (1991); *INS v. Delgado*, 466 U.S. 210 (1984).

The defendant's second argument is that the *Terry* stop was not based on specific criminal activity. Unlike reliance upon "inarticulate hunches" as condemned by *Terry*,[1] the officers here set forth many specific and articulable facts which reasonably warranted the intrusion as noted in the Recommendation. (Recommendation 13.) The *Terry* standard sanctions a stop when a "police officer observes *unusual* conduct which leads him reasonably to conclude in light of his experience that criminal activity *may be* afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (emphasis added). The officers here were on extra patrol because there had recently been criminal activity in the area. Walking down a railroad track[2] in this high-crime area at a late hour, with roads parallel to the track as an alternative path, and carrying a duffel bag, which could be used to carry loot from a theft, is unusual enough for a reasonable officer to conclude there may be criminal activity afoot.

The defendant's final argument is that the loss of evidence violated his right to due process. Although many items found on the defendant on the night of his arrest were subsequently lost or destroyed,[3] the defendant centers his argument on the lost pistol case

---

[1] The defendant states in his brief that "Officer Creighton had nothing but a 'gut hunch that maybe [Mr. Barnett] has something to do with something.'" (Def.'s Objection 4 (quoting Mot. Hr'g Tr. 106:10-11).) However, the officer's testimony paints an entirely different story and reveals several objective factors were involved in the decision to engage the defendant.

[2] Perhaps not insignificantly, it is undisputed that the defendant was walking down railroad tracks, which could constitute criminal trespass. *See Weatherly v. Nashville, C. & St. L. Ry.*, 51 So. 959, 961 (Ala. 1909) ("Except at public crossings and a few other places, the track and right of way of a railroad are its exclusive property, upon which a stranger has no right to be . . . ."); Ala. Code § 13A-7-4 (1975).

[3] Officer George Michael Creighton testified that various foreign coins, one pair of playing dice, two baseball cards, one toiletry bag, and the pistol case were either lost or

because it was immediately recognized by the officers – which led to the discovery of the firearm – and because the two officers gave slightly different descriptions of the case. Officer Creighton described the pistol case as a heart-shaped black leather case, "with a little bit of texture to it," (Mot. Hr'g Tr. 83:23-90:3), and Officer Morris described it as "a small black handgun case" with a soft cover composed of black nylon and shaped like a heart (*id.* at 142:19-143:3). The only contradiction between these two accounts is the composition of the pistol case material, which is not likely to contribute significantly to the defense in light of the corroborating descriptions of the pistol case's color and shape. *See United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) ("'In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense.'" (quoting *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993))).

Additionally, while the defendant bemoans the lack of an explanation as to the loss of the evidence "other than . . . speculation," (Def.'s Objection 6), the burden is on the "'criminal defendant [to] show bad faith on the part of the police.'" *Id.* (quoting *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004)). The government has provided a viable explanation for the loss of the property that has nothing to do with bad faith. The detective who took

---

destroyed. (Mot. Hr'g Tr. 39:2-9.) Although at least some of these items initially made it to the police evidence storage facility, (*id.* at 167:12-19), only the firearms and ammunition were ultimately retained by the police. (*Id.* at 162:20-25.) According to a detective, the missing items have not been located since the police department moved its evidence storage system into a new facility. (*Id.* at 163:23-165:12.)

custody of the property testified that he does not know the defendant and does not have any ill feelings toward him. (Mot. Hr'g Tr. 165:18-21.) There has been no evidence the police acted in bad faith, and the defendant has failed to meet his burden. Therefore, the defendant has failed to show the loss of evidence violated his due process rights.

The court finds any remaining objection by the defendant not specifically addressed in this order to have been sufficiently, and correctly, addressed in the Recommendation. Therefore, after an independent and *de novo* review of the entire record and upon consideration of the defendant's objections and the Recommendation of the Magistrate Judge, it is ORDERED that:

1. The Objection (Doc. # 35) is OVERRULED;

2. The Recommendation (Doc. # 34) is ADOPTED; and

3. The Motion to Suppress (Doc. # 10) is DENIED in part and GRANTED in part as follows:

    a. GRANTED with respect to any statement made by the defendant after he was handcuffed and placed under formal arrest; and

    b. DENIED in all other respects.

DONE this 9th day of June, 2008.

                         /s/ W. Keith Watkins
                         UNITED STATES DISTRICT JUDGE